IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Jason Kruger, ) | |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| v. ) | |
| ) | |
| Alejandro Mayorkas, United States ) | |
| Secretary of Homeland Security, et al., ) | Case No.: 1:22-cv-00062 |
| ) | |
| Defendant. ) | |

On August 21, 2023, Defendants Alejandro Mayorkas, in his official capacity as Secretary of U.S. Department of Homeland Security; Ur M. Jaddou, in her official capacity as Director of the U.S. Citizenship and Immigration Services; and Leslie D. Tritten, in her official capacity as Director of the U.S. Citizenship and Immigration Services (collectively "Defendants"), filed a *Motion for Summary Judgment*. (Doc. No. 24). The same day, Plaintiff Jason Kruger ("Plaintiff") filed a competing *Motion for Summary Judgment*. (Doc. No. 25). On September 11, 2023, Defendants filed a response to Plaintiff's motion. (Doc. No. 27). The same day, Plaintiff filed a response to Defendants' motion. (Doc. No. 28). On September 25, 2023, Defendants filed a reply. (Doc. No. 30). On September 25, 2023, Plaintiff filed a reply. (Doc. No. 31). On April 15, 2024, Defendants supplemented the Administrative Record with military records. (Doc. No. 34). On April 30, 2024, Plaintiff filed a *Supplemental Brief in Support of Motion for Summary Judgment and Response to Military Records*. (Doc. No. 35). On May 7, 2024, Defendants filed a *Supplemental Brief in Support of Motion for Summary Judgment and Response to Plaintiff's Supplemental Briefing*. (Doc. No. 36). For the reasons articulated below, Defendants' *Motion for Summary Judgment* (Doc. No. 24) is granted, and Plaintiff's *Motion for Summary Judgment* (Doc. No. 25) is denied.

I.   **BACKGROUND**

Since January of 2008, Plaintiffs' spouse, Alfridah Lagat-Kruger ("Lagat-Kruger") has resided in the United States on an A-3 visa. (Doc. No. 1 at 7; Doc. No. 17 at 60). This visa allowed Lagat-Kruger to remain in the United States until January 2011. (Doc. No. 1 at 7; Doc. No. 17 at 60).

Lagat-Kruger remained in the United States after January 2011, resulting in the United States Department of Homeland Security commencing removal proceedings in March 2012. (Doc. No. 17 at 60-61).

On April 15, 2012, Lagat-Kruger married Hubson Ngirayobech Herman ("Herman"), a non-citizen soldier in the United States Army, in Colorado Springs, Colorado. (Doc. No. 1 at 7). According to Lagat-Kruger, she had been introduced to Herman via Skype in early 2012, by her childhood friend and Herman's fellow battalion member, Vincent Mutai ("Mutai").[1] (Doc. No. 17 at 52).

In April 2013, Herman went absent without leave ("AWOL") and was subsequently dishonorably discharged from the U.S. Army. (Doc. No. 17 at 430). On June 8, 2013, U.S. Army officials issued a federal warrant for Herman as a deserter. (*Id.*). On June 7, 2013, Mutai was convicted by a military court martial of conspiracy to violate U.S. Immigration laws. (*Id.*).

In summer 2014, Lagat-Kruger moved to Williston, North Dakota. (Doc. No. 17 at 55). On March 17, 2016, Lagat-Kruger and Herman legally divorced. (Doc. No. 1 at 7). On July 1, 2016, Lagat-Kruger married Plaintiff, a United States citizen. (*Id.*). Plaintiff subsequently filed an I-130 petition on Lagat-Kruger's behalf on February 15, 2017. (Doc. No. 1-2).

---

[1] Lagat-Kruger maintains she is not related by blood to Mutai. (Doc. No. 17 at 52). However, the United States Citizenship and Immigration Services ("USCIS") records reflect Lagat-Kruger and Mutai are cousins. (*See* Doc. No. 1-3). Mutai also asserts in a sworn statement that they are second cousins. (Doc. No. 34-2 at 52).

2

On April 25, 2019, the USCIS issued a Notice of Intent to Deny ("NOID") the I-130 Petition. (Doc. No. 1-3). Therein, the USCIS alleged Lagat-Kruger entered into her previous marriage with Herman with the intent to evade immigration laws and was thus prohibited from being a beneficiary of the I-130 Petition. (*Id.* at 3).

On May 24, 2019, Plaintiff objected to the USCIS's conclusions and submitted additional evidence. (Doc. No. 1 at 8-9).

On September 11, 2019, the USCIS issued a decision denying the I-130 Petition, finding the evidence submitted "fails to overcome the clear and convincing evidence that the beneficiary entered into a sham marriage with Herman in order to obtain immigration benefits." (Doc. No. 1-4 at 1, 4).

On October 2, 2019, Plaintiff filed a Notice of Appeal to Board of Immigration Appeals from a Decision of a DHA Officer with the USCIS, within which he appealed the denial of the I-130 Petition. (Doc. No. 1-5). Plaintiff filed a Notice of Withdraw of Appeal on April 8, 2022. (Doc. No. 1-6).

On April 11, 2022, Plaintiff initiated the above-captioned action by Complaint against Defendants, alleging: (1) the decision to deny the I-130 Petition "is not in accordance with the law because a marriage to a non-U.S. citizen or lawful permanent resident cannot be found to be entered into for the purpose of obtaining an immigration benefit;" (2) the agency failed to follow its own regulations in issuing the decision; and (3) the decision is not in accordance with law as Defendants failed to follow precedential administrative case law. (*See* Doc. No. 1).

On June 16, 2022, Defendants filed a Partial Motion to Dismiss. (Doc. No. 7). On March 29, 2023, Defendants' motion was granted in part and denied in part. (Doc. No. 11). Thereafter the parties consented to magistrate judge jurisdiction and the matter was reassigned. (Doc. No. 16).

On June 14, 2023, Defendants filed the Administrative Record. (Doc. No. 17). On July 19, 2023, Plaintiff filed a Motion to Amend to Complete the Administrative Record. (Doc. No. 18). On August 15, 2023, Defendants filed a response in opposition. (Doc. No. 21). On August 19, 2023, Plaintiff filed a reply and Motion for Extension of Time to File Dispositive Motions. (Doc. Nos. 22, 23). On February 15, 2024, the court granted Plaintiff's motion to correct the record and found as moot the motion for extension of time to file dispositive motions. (Doc. No. 32).

On August 21, 2023, the parties filed competing motions for summary judgment. (Doc. Nos. 24, 25).

## II. LEGAL STANDARD

When a citizen marries a noncitizen, the citizen may petition for lawful permanent residency for the noncitizen spouse by filing an I-130 petition. 8 U.S.C. §§ 1151, 1154; 8 C.F.R. § 204.1(a)(1). If the petition is approved, the non-citizen spouse may apply for permanent residency. 8 U.S.C. §§ 1255(a), 1186a. However,

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). This requirement is mandatory and bars approval of an I-130 petition if the noncitizen previously sought immigration benefits, through fraudulent marriage or the attempt or conspiracy to do so. *Matter of Tawfik*, 20 I. & N. Dec. 166, 167 (BIA 1990). This is true, even if the current marriage is bona fide, or the noncitizen was never prosecuted for past conduct. *Id.*

The USCIS's decision to deny an I-130 petition must be based on "substantial and probative evidence" that a noncitizen attempted or conspired to evade immigration laws through fraudulent marriage. *See* 8 C.F.R. § 204.2(a)(1)(ii). In assessing the petition, USCIS uses

4

"documents in its possession, interviews with the couple, and observations made during site visits." *Zerezghi v. U.S. Citizenship & Immigr. Servs.*, 955 F.3d 802, 805 (9th Cir. 2020). If substantial and probative evidence of marriage fraud exists, the USCIS will issue a NOID. *See* 8 C.F.R. § 103.2(b)(8)(iii). This shifts the burden to the petitioner to show the marriage was not fraudulent. *Zerezghi*, 955 F.3d at 805; *see Matter of Kahy*, 19 I. & N. Dec. 803, 806-07 (BIA 1988).

Under Federal Rules of Civil Procedure 56(a), summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not appropriate when there are factual disputes that may affect the case's outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if evidence would allow a reasonable factfinder to return a verdict in favor of the nonmoving party. *Id.* The court must inquire as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

Review of the imposition of the marriage-fraud penalty is governed by the Administrative Procedure Act ("APA"). *See Zerezghi*, 955 F.3d at 807. The agency's decision will not be set aside unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Mercier v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 850 F.3d 382, 388 (8th Cir. 2017). This standard of review is highly deferential, and the court may not substitute its judgment for that of the agency. *Sierra Club v. Env't Prot. Agency*, 252 F.3d 943, 947 (8th Cir. 2001); *Judulang v. Holder*, 565 U.S. 42, 52-53 (2001).

### III.  DISCUSSION

#### A. Substantial and Probative Evidence of a Sham Marriage

Defendants argue summary judgment is appropriate as there is substantial and probative evidence within the administrative record to show Lagat-Kruger and Herman entered into a sham marriage. (Doc. No. 27 at 3). Plaintiff argues for summary judgment on the basis the record does not contain substantial and probative evidence of marriage fraud on the part of Lagat-Kruger. (Doc. No. 28 at 15).

The court first addresses Plaintiff's argument that the court should find the denial of the I-130 petition arbitrary and capricious based on the Article 15-6 Investigation Reports being "explicitly based on a preponderance of the evidence." The court is not persuaded by such an argument. The decision under review in this matter is the denial of the I-130 petition Therefore, "any alleged errors in previous proceedings not under review here are therefore irrelevant." *Channica C. v. Cuccinelli*, No. 21-CV-0127 (PJS/TNL), 2022 WL 3219606, at *3 (D. Minn. Aug. 5, 2022); *see also Iyawe v. Garland*, 28 F.4th 875, 881 n. 6 ("The Iyawes also argue that the four previous denials were not based on substantial evidence and that those denials continue to prejudice Simon. But the focus of this appeal is the denial of Alicia's petition, which -as we explain above- was based on 'substantial and probative evidence' in the entire record, not on the mere fact that the earlier applications had been denied. As USCIS recognized, in making a fraudulent marriage determination, 'the district director should not give conclusive effect to determinations made in a prior proceeding, but rather, should reach his own independent conclusion based on the evidence before him.' But the director 'may rely on any relevant evidence, including evidence having its origin in prior Service proceedings involving the beneficiary.'") (internal citations omitted).

Though the Army's report details that the findings are made by the preponderance of the evidence (*See* Doc. No. 34-2 at 13), the USCIS's decision must be read in conjunction with the NOID, which references the correct evidentiary standard. *See Channica C.*, 2022 WL 3219606, at *3. Specifically, the NOID provides:

> A review of the record shows substantial and probative evidence exists to sustain the denial of the instant Form I-130. This bar to the approval of your petition in behalf of Lagat Kruger is based on the evidence in the record regarding her prior marriage and applies regardless of whether or not your marriage to her is determined to be bona fide and entered into without regard to immigration benefits.

(Doc. No. 17 at 151). This situation is unlike that in *Pitman v. United States Citizenship & Immigr. Servs.*, 485 F. Supp. 3d 1349 (D. Utah 2020), where the court found the denial of the I-130 petition arbitrary and capricious as the NOID incorrectly imposed the burden of proof on the petitioner to prove the beneficiary's marriage was not fraudulent. *Id.* at 1355. Here, after finding substantial and probative evidence existed to deny the I-130 petition, the NOID gave Plaintiff an opportunity to submit rebuttal evidence within thirty (30) days. (Doc. No. 17 at 151); *see Zerezghi v. United States Citizenship & Immigr. Servs.*, 955 F.3d 802, 805 (9th Cir. 2020) ("If the government finds that there is 'substantial and probative evidence' of marriage fraud, it issues a Notice of intent to Deny the immigration petition. The burden then shifts to the petitioner to rebut that finding.") Plaintiff did submit rebuttal evidence, which was not sufficient to overcome the burden.[2] The court now turns its attention to whether there is substantial and probative evidence of marriage fraud within the record.

The decision to deny an I-130 petition pursuant to 8 U.S.C. § 1154(c) must be based on "substantial and probative evidence" of an attempt or conspiracy to evade immigration laws

---

[2] Plaintiff also argues Defendants erroneously shifted the burden to Plaintiff to demonstrate Lagat-Kruger's first marriage was bona fide. However, because there is substantial and probative evidence of marriage fraud in the record, the burden was appropriately shifted to Plaintiff.

through fraudulent marriage. *See* 8 C.F.R. § 204.2(a)(1)(ii). "Substantial and probative evidence" is a higher standard than that of preponderance of the evidence but less than clear and convincing evidence. *Matter of P. Singh*, 27 I. & N. Dec. 598, 607 (BIA 2019). This standard refers to "the quality and quantity of competent, credible, and objective evidence." *Id.* at 606. Evidence may be direct or circumstantial. *Id.* at 607-608. Direct evidence includes "[e]vidence that is based on personal knowledge or observation and that, if true proves a fact without interference or presumption." *Id.* at 607 (quoting *Evidence, Black's Law Dictionary* (11th ed. 2019)). Circumstantial evidence is "[e]vidence based on inference and not on personal knowledge or observation." *Id.* at 608 (quoting *Evidence, Black's Law Dictionary* (11th ed. 2019)). Factors to be considered in determining whether the "substantial and probative evidence" standard is met include: significant inconsistences with minimal documentary evidence of a shared life; evidence parties knowingly and deliberately attempted to mislead officials regarding cohabitation, joint finances, or other aspects of the marriage; evidence of parties having other romantic partners, with whom they share children, and the information is not otherwise disclosed or is deliberately concealed; statements from family members, employers, or acquaintances indicating lack of awareness of the marriage or that parties informed them the marriage was a sham; and evidence one or both parties filed taxes as a single person during the marriage, or are holding themselves out as single while representing they are married. *Id.* at 608-09.

Plaintiff argues none of the common examples of marriage fraud exist in the certified administrative record ("CAR"). The court disagrees. There is ample evidence in the record to show a sham marriage occurred between Herman and Lagat-Kruger. The records show that Lagat-Kruger's removal proceedings commenced on March 12, 2012. (*See* Doc. No. 1 at 7; Doc. No. 17 at 60-61). On April 15, 2012, she married Herman, approximately one month after being notified

of the removal proceedings. Nevertheless, Lagat-Kruger is inconsistent on when she met Herman. In her affidavit she alleges meeting Herman in early 2012 over Skype, and did not meet him in person until she traveled to Colorado in spring of 2012. (Doc. No. 17 at 52). However, in her interview she stated she met him in 2011 in New York at a party. (*Id.* at 152). This is also inconsistent from the sworn statement of Herman, who stated that in November 2011, he and Mutai went to Mutai's home, and that is where Mutai introduced them. (Doc. No. 34-2 at 32). This is additionally inconsistent from the statement of Mutai, who alleged Herman and Lagat-Kruger met in April 2012. (Doc. No. 34-2 at 24).

Further, in her affidavit, Lagat-Kruger notes that both Herman and Mutai were serving in the Army and Herman would be around when she "chatted' with Mutai, but in her interview, she alleges to not have known Herman was in the military until she moved to Colorado. (Doc. No. 17 at 52, 152). Additionally, while the court acknowledges there is some documentation showing joint utilities (*Id*. at 102),[3] the evidence also shows that Mutai, Herman, and Lagat-Kruger lived together as roommates, with all three names on the residential rental lease agreement. (*Id.* at 64-92). Moreover, despite asserting they were husband and wife, Lagat-Kruger failed to list Herman as an emergency contact or beneficiary designation during her employment. (*Id.* at 355, 401).[4] Herman was also unaware of Lagat-Kruger's visa type, first asserting it was a student visa, then a work visa. (Doc. No. 34-2 at 19, 33).

There is also evidence in sworn statements that Herman informed fellow soldiers the marriage was a sham. Notably, in his sworn statement, Sergeant Fritz ("Fritz") disclosed that

---

[3] While the billing address is in both Herman and Lagat-Kruger's names, the billing account is only addressed to Lagat-Kruger.

[4] The court notes that Lagat-Kruger's employment was from October 2014 to August 2016. At this time, she was no longer living with Herman and alleges to have attempted to divorce him in 2013. However, the two were still legally married until March 2016.

Herman admitted to not knowing Lagat-Kruger well and just wanted to help her and Mutai out so she could remain in the country, and that Fritz warned him prior to the marriage that it was a bad idea. (Doc. No. 34-2 at 16, 28). It is also noted Mutai informed Fritz that Herman was willing to help out by marrying Lagat-Kruger so she could remain in the United States. (*Id.* at 17, 29). Second Lieutenant Fite ("Fite") provided similar information in his sworn statement, noting Herman informed him that he had not known Lagat-Kruger long and wanted to help out a friend. (*Id.* at 21, 26). When asked if the marriage was legitimate, Herman reportedly informed Fite that he only wanted to help her out and planned to leave or divorce her. (*Id.;* Doc. No. 34-2 at 27). When provided with an opportunity to make a sworn statement, Herman gave statements inconsistent with those provided to and reported by Fritz and Fite. He gave a different story, asserting he was hanging out with Mutai and "his cousin" for awhile and they decided to take their relationship to the next level. (Doc. No. 34-2 at 19).

It is also notable that within his statements, Herman first asserted Lagat-Kruger asked him to marry her (Doc. No. 34-2 at 19), but when asked later, he stated, "[W]e were talking and I just asked her what she thinks about us getting married and she approved." (*Id.* at 38). Further, Herman did not know Lagat-Kruger's favorite, color, shoe size, or movie when asked. (*Id.* at 40).

Though Plaintiff argues Fritz and Fite's statements were "uncorroborated hearsay statements" insufficient to overcome those made by Herman, the court is not inclined to agree. The statements made during the Army investigation were sworn statements, made under oath. Moreover, both Fritz and Fite were consistent in their statements, but those of Herman shifted from the time he spoke to both individuals to when the investigation commenced, and he was questioned. Further, the court is cognizant of the fact Herman had an interest in changing his statements after he was informed his actions could be illegal.

Plaintiff additionally contends there cannot be a sham marriage as Lagat-Kruger married Herman, who is not a United States citizen, and no I-130 petition was ever submitted. However, Herman had the ability to naturalize based on his military service, and did in fact submit an N-400 Application for Naturalization on May 1, 2013. (Doc. No. 17 at 430). Furthermore, in her motion for change of venue (pertaining to removal proceedings), Lagat-Kruger asserted:

> 5. The respondent will be applying for the following forms of relief from removal: Adjustment of Status, pursuant to sec. 245 (a) of the Immigration and Nationality Act. This respondent is married to an Active-Duty soldier who entered the military pursuant to section 341 of the Compact of Free Association Approval Act (Public Law 99-658, Nov. 14th, 1986) between the United States and the Republic of Palua, and simultaneously, section 504 of Title 10, of the United States Code, *and who is (therefor) eligible to therefore naturalize pursuant to sec. 328 (a) of the Immigration and Nationality Act, as amended*.

(Doc. No. 17 at 335) (emphasis added). This evidence in the record disputes Plaintiff's claim that there can be no sham marriage based on Herman's status as a non-United States citizen as he applied for naturalization and Lagat-Kruger attempted to use Herman's status as a solider and his ability to naturalize as a foundation of relief from removal. This evidence is sufficient to form the basis of an overt act to further the conspiracy, despite Plaintiff's argument no overt act occurred. (*See* Doc. No. 31 at 2-4).

### B. Inspection of the Record

Plaintiff contends summary judgment should be granted as 8 C.F.R. § 103.2(b)(16) requires inspection of the evidence in the record prior to denial of an I-130 petition. (Doc. No. 28 at 27). Defendants argue Plaintiff is not entitled to literally inspect the record. (Doc. No. 27 at 9).

8 C.F.R. § 103.2(b)(16) addresses inspection of evidence in the record. The regulation states:

> (16) Inspection of evidence. An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs.

> (i) Derogatory information unknown to petitioner or applicant. If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section. Any explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding.
>
> (ii) Determination of statutory eligibility. A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner, except as provided in paragraph (b)(16)(iv) of this section.
>
> (iii) Discretionary determination. Where an application may be granted or denied in the exercise of discretion, the decision to exercise discretion favorably or unfavorably may be based in whole or in part on classified information not contained in the record and not made available to the applicant, provided the USCIS Director or his or her designee has determined that such information is relevant and is classified under Executive Order No. 12356 (47 FR 14874; April 6, 1982) as requiring protection from unauthorized disclosure in the interest of national security.
>
> (iv) Classified information. An applicant or petitioner shall not be provided any information contained in the record or outside the record which is classified under Executive Order No. 12356 (47 FR 14874; April 6, 1982) as requiring protection from unauthorized disclosure in the interest of national security, unless the classifying authority has agreed in writing to such disclosure. Whenever he/she believes he/she can do so consistently with safeguarding both the information and its source, the USCIS Director or his or her designee should direct that the applicant or petitioner be given notice of the general nature of the information and an opportunity to offer opposing evidence. The USCIS Director's or his or her designee's authorization to use such classified information shall be made a part of the record. A decision I whole or in part on such classified information shall state that the information is material to the decision.

8 C.F.R. § 103.2(16)(i)-(iv).

This is a situation where the parties interpret the regulation differently. Plaintiff asserts the regulation should not be read to have a limiting exception, rather it adds additional detail to the inspection requirement. Defendants argue that the regulation states actual inspection is not required when derogatory information unknown to the Plaintiff is used to deny the petition, rather, the Plaintiff need only be advised of the information and given an opportunity to rebut it. The court is

persuaded by the Defendants' argument as a reading of the plain language of the regulation includes multiple exceptions. Notably, "(16) Inspection of evidence. An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, *except as provided in the following paragraphs*." 8 C.F.R. § 103.2(b)(16) (emphasis added). Further, "(i) Derogatory information unknown to petitioner or applicant. If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, *except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section*. Any explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding." 8 C.F.R. § 103.2(b)(16)(i) (emphasis added).

The court is further persuaded by the findings of the United States Court of Appeals for the Seventh Circuit in *Smith v. Garland*, 103 F.4th 1244 (7th Cir. 2024). The court noted that under 8 C.F.R. § 103.2(b)(16)(i), when the USCIS intends to deny the I-130 Petition based on derogatory information, it must "advise[] of this fact and offer[] an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered." *Id.* at 1254; *see* 8 C.F.R. § 103.2(b)(16)(i). Such a decision must be based "only on information contained in the record of proceeding in which is disclosed to the applicant or petitioner." *Id.*; *see* 8 C.F.R. § 103.2(b)(16)(ii). However, there is no requirement to produce the actual record of the proceeding, rather, it requires disclosure of the information contained within the record of the proceeding. *Id.* Such a requirement is met when the USCIS provides a summary of the sworn statement against them. *Id.* at 1254-55;

13

*see also Ghaly v. I.N.S.*, 48 F.3d 1426, 1434 (7th Cir. 1995) ("The regulations do not mandate that [petitioner] must be provided an opportunity to view each and every sworn statement.").

In the present matter, the USCIS issued the NOID on April 25, 2019, in which Plaintiff was informed of the preliminary findings for denial of the I-130 petition and given thirty (30) days to respond with rebuttal evidence. (*See* Doc. No. 17 at 150-151). The USCIS issued its denial on September 11, 2019, wherein it incorporated the notice and disclosed the information on which it relied. This is sufficient for USCIS to have complied with the procedures laid out in 8 C.F.R. § 103.2(b)(16)(ii).

Even if there was a failure to allow Plaintiff to literally inspect the record, the court has since ordered Defendants to supplement the record. (*See* Doc. Nos. 32, 34). Plaintiff has had ample opportunity to inspect the record and submit appropriate supplemental briefing to the court, though only a summary of the basis of denial is required when relying on derogatory information. Moreover, the court is not inclined to address Plaintiff's argument that the statements in the DHS' Report of Investigation, Statement of Findings, and NOID are "inherently untrustworthy" and cannot be considered substantial and probative evidence based on the missing records as Plaintiff has since had an opportunity to inspect the United States Army records.

### C. Mutai's Summary Court-Martial Conviction

Finally, Plaintiff disagrees that Mutai's court-martial records may be used to support a finding of substantial and probative evidence of marriage fraud as the records are not available. It is apparent from the record that a summary court-martial occurred. However, there are not available records from the summary court-martial itself as they were destroyed after seven years per Army policy. (*See* Doc. No. 34-4 at 1-2). In a declaration by Major Todd Wayne,[5] he certified

---

[5] Major Todd Wayne served as Trial Counsel during the summary court-marital proceedings brought against Mutai.

that Mutai was convicted at the summary court-martial and sentenced to 45 days hard labor. (Doc. No. 34-2 at 2). He also identified that the emails sent to Special Agent John Armbruster, confirming the conviction and sentence, were true and correct copies. (*Id.*; *see also* Doc. No. 34-2 at 71). As such, it does not stand to reason that the USCIS could not consider the summary court-martial conviction as it occurred and there are references to the conviction throughout the record. Even if the summary-court martial could not be used to support the assertion that substantial and probative evidence of marriage fraud exists, there is considerable evidence available throughout the record to still support such a finding.

## IV.   CONCLUSION

For the reasons articulated above, the Defendants' *Motion for Summary Judgment* (Doc. No. 24) is **GRANTED**, and Plaintiff's *Motion for Summary Judgment* (Doc. No. 25) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 13th day of February, 2025.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court
